UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 10-0051 (PLF) |
| RANDOLPH DANSON, | ) ) ) | |
| Defendant. | ) ) | |

OPINION AND ORDER

Pending before this Court are defendant Randolph Danson's Pro Se Motion to Reduce Sentence Pursuant to the First Step Act of 2018 ("Pro Se Mot.") [Dkt. No. 626] and defendant's Pro Se Motion for Compassionate Release ("Second Supp. Pro Se Mot.") [Dkt. No. 656]. Mr. Danson contends that he is at a high risk of contracting the novel coronavirus ("COVID-19") and requests compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Supplemental Emergency Motion for Compassionate Release and Reply to Government Opposition ("Def.'s Reply") [Dkt. No. 667] at 1. The government opposes this motion. Government Opposition to the defendant's Pro Se Motions to Reduce Sentence ("Gov't Opp.") [Dkt. No. 660]. For the reasons that follow, the Court will grant Mr. Danson's motion for compassionate release.[1]

---

[1] The Court has reviewed the following documents in connection with the pending motion: Superseding Indictment ("Indictment") [Dkt. No. 88]; Plea Agreement as to Randolph Danson ("Plea Agrmt.") [Dkt. No. 290]; Government's Proffer of Proof in Support of Defendant's Plea of Guilty ("US Proffer") [Dkt. No. 291]; Presentence Investigation Report ("PSR") [Dkt. No. 307]; Judgment [Dkt. No. 336]; Transcript of Sentencing Hearing of December 21, 2011 [Dkt. No. 536]; Robert Smith Order ("Smith Order") [Dkt. No. 606]; Order Regarding Early Release Motion ("Early Release Order") [Dkt. No. 612]; Pro Se Motion to Reduce Sentence Pursuant to the First Step Act of 2018 ("Pro Se Mot. for Sentence Reduction")

I. BACKGROUND

On October 7, 2011, defendant Randolph Danson pled guilty to Count Two of the Superseding Indictment, Conspiracy to Participate in a Racketeer Influenced Corrupt Organization ("RICO"), in violation of 18 U.S.C. § 1962(d). Judgment at 1; see also Plea Agrmt. ¶ 1; Indictment at 26-31. Between 2006 and 2010, Mr. Danson was a member of an enterprise whose objective was to "obtain as much money and things of value as possible through the trafficking of controlled substances, including PCP, heroin, cocaine, cocaine base, and marijuana" in the District of Columbia and elsewhere. US Proffer ¶¶ 1-3. As a member of the enterprise, Mr. Danson "sold wholesale and retail amounts of PCP and other narcotics" and "also began running a 'stash house.'" Id. ¶ 8(a). He was "accountable for at least 3 but less than 10 kilograms of . . . PCP," which was the total amount he distributed or intended to distribute. Id. ¶ 10. Mr. Danson "distributed the enterprise's narcotics to other co-conspirators, to wholesale customers, and to drug users." Id. ¶ 8(a).

At sentencing on December 21, 2011, Judge Rosemary Collyer accepted Mr. Danson's plea under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and sentenced him to 192 months of incarceration and a period of five years of supervised release. Judgment at 2-3; Transcript of Sentencing Hearing at 2-3. According to the Probation Office, Mr.

---

[Dkt. No. 626]; Charles Wade Supplemental Motion for Reduction of Sentence Under 18 U.S.C. § 3582(c)(2) & Amendment 782 ("Wade Mot.") [Dkt. No. 654]; Pro Se Motion to Reduce Sentence Pursuant to the First Step Act of 2018 ("Pro Se Mot.") [Dkt. No. 626]; Pro Se Motion for Compassionate Release ("Second Supp. Pro Se Mot.") [Dkt. No. 656]; United States' Opposition to the defendant's Motion For § 3582(c)(2) Relief and Supplemental Motion for Reduction of Sentence under 18 U.S.C. § 3582(c)(2) & Amendment 782 ("Gov't Opp. to Wade Mot.") [Dkt. No. 657]; Government Opposition to the defendant's Pro Se Motions to Reduce Sentence ("Gov't Opp.") [Dkt. No. 660]; Supplemental Emergency Motion for Compassionate Release and Reply to Government Opposition ("Def.'s Reply") [Dkt. No. 667]; and Defendant's Sealed Exhibit ("Def.'s Sealed Ex.") [Dkt. No. 668].

Danson's base offense level under the United States Sentencing Guidelines ("U.S.S.G.") would have been thirty-four. Gov't Opp. at 2-3 (citing PSR ¶¶ 15, 20). After applying a three-level downward adjustment for acceptance of responsibility, Mr. Danson's offense level would have been thirty-one, with a Criminal History Category of IV and a Sentencing Guidelines range of 151 to 188 months. Def.'s Reply at 40-41; see PSR ¶¶ 17, 81-82. It was determined, however, that Mr. Danson was a career offender; with this enhancement, his base offense level was thirty-seven and his Criminal History Category was VI. PSR ¶¶ 62-71, 82. This enhancement was based on Mr. Danson's two prior inchoate drug convictions: (1) a 2004 conviction for attempted distribution of cocaine, and (2) a 2006 conviction for attempted possession with intent to distribute PCP ("the inchoate offenses"). Id. ¶¶ 74, 76. Accounting for the three-level downward adjustment for acceptance of responsibility, the total offense level under the Sentencing Guidelines with a career offender enhancement was thirty-four, with a Criminal History Category of VI, resulting in a Sentencing Guidelines range of 262 to 327 months. Id. ¶ 125. Because Mr. Danson pled guilty under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, however, Judge Collyer sentenced him to 192 months imprisonment. See PSR ¶ 130; Def.'s Reply at 5. Currently, Mr. Danson has served approximately 122 months of his 192 month sentence. Def.'s Reply at 5. With sixteen months of accrued good time credit, he is projected to be released on December 8, 2022. Id.

        Mr. Danson, now thirty-five years old, is serving the remainder of his sentence at Federal Medical Center ("FMC") Lexington. Def.'s Reply at 5. According to defendant's Reply, as of May 27, 2020, FMC Lexington reported 257 positive cases of the coronavirus at its facilities, four of which resulted in death. Id. at 14. Mr. Danson contends that his personal history, individual characteristics, and current undiagnosed medical condition make him

particularly vulnerable to COVID-19. Id. at 33. Mr. Danson has a history of smoking and chronic alcohol addiction. Id. at 1; see Def.'s Sealed Ex. G at 1. He also suffers from a health condition which causes fainting, dizziness, and vomiting. See Def.'s Sealed Exs. B, C. Mr. Danson's blood tests are also indicative of several diseases, for which he has yet to be given a proper diagnosis. Def.'s Reply at 1; see Def.'s Sealed Exs. D, G. Because of these circumstances, Mr. Danson submitted a compassionate release request to FMC Lexington on May 19, 2020, and has received no response. He now moves for a reduction of his sentence to time served pursuant to 18 U.S.C § 3582(c)(1)(A)(i). Def.'s Reply at 1, 5.

## II.  LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed . . . but the rule of finality is subject to a few narrow exceptions." Freeman v. United States, 564 U.S. 522, 526 (2011) (internal quotation marks and citation omitted). One such exception is codified as 18 U.S.C. § 3582(c)(1)(A). As modified by the First Step Act in 2018, Section 3582(c)(1)(A) allows courts to modify a sentence upon motion by a defendant once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request." 18 U.S.C. § 3582(c)(1)(A). Mr. Danson has exhausted his administrative remedies as of June 18, 2020.

Once the exhaustion requirement has been met, a defendant must show that "extraordinary and compelling reasons warrant such a reduction," and that a sentence reduction is "consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission has stated that "extraordinary and compelling reasons" exist where the defendant is "suffering from a serious physical or mental

4

condition" or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), (III).  Health conditions that limit one's ability to practice self-care in a detention facility include those that "compromise a defendant's ability . . . to provide for his own activities of daily living, such as eating and drinking, toileting, washing and dressing, and mobilization." United States v. Morris, Criminal No. 12-154, 2020 U.S. Dist. LEXIS 91040, at *19 (D.D.C. May 24, 2020).  The Sentencing Commission has acknowledged, however, that there may be "[o]ther [r]easons" presenting "an extraordinary and compelling reason other than, or in combination with, the reasons described" elsewhere in the commentary.  Id. at *20 (quoting U.S.S.G. § 1B1.13 cmt. n.1(D)).  To that end, the COVID-19 pandemic falls under such an "other reason" that may present an "extraordinary and compelling reason" for a sentence reduction.  United States v. Morris, 2020 U.S. Dist. LEXIS 91040, at *20.

        The statute and the policy statement further instruct the Court to consider the sentencing factors set out in 18 U.S.C. § 3553(a) "to the extent that they are applicable." U.S.S.G. § 1B1.13; see also 18 U.S.C. § 3582(c)(1)(A).  The Court must consider these factors "with an eye toward whether it is necessary to maintain the prior term of imprisonment despite the extraordinary and compelling reasons to modify the defendant's sentence."  United States v. Johnson, Criminal No. 15-125, 2020 U.S. Dist. LEXIS 86309, at *13 (D.D.C. May 16, 2020).

### III.  DISCUSSION

        Mr. Danson's undiagnosed health condition, personal history, and individual characteristics, which increase his potential for contracting COVID-19, and the severe outbreak of the virus at FMC Lexington, are "extraordinary and compelling" circumstances warranting a

5

sentence reduction.  In addition, Mr. Danson's individual circumstances are consistent with the sentencing factors set out in 18 U.S.C. § 3553(a) for the following reasons:  (1) if he were sentenced today, he would not be considered a career offender; (2) his own individual conduct as a member of the conspiracy did not include the commission of "crimes of violence"; and (3) he has taken positive steps towards rehabilitation while incarcerated.

Mr. Danson suffers from an undiagnosed, underlying health condition, which has manifested itself in fainting, dizziness, severe chest and stomach pain, bloody stool, and abnormal blood test results.  Def.'s Reply at 36-37.  While the exact cause of his condition is unknown, Mr. Danson's medical records indicate that he could be suffering from a range of heart, liver, or kidney ailments.  Id. at 36-38; see Def.'s Sealed Ex. G.  According to the CDC, each of these ailments could place him at a higher risk of developing COVID-19.  See Groups at Higher Risk for Severe Illness, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.  Mr. Danson's history of chronic alcohol addiction and smoking also place him at a higher risk of developing COVID-19.  See Drinking Alcohol and COVID-19, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/daily-life-coping/stress-coping/alcohol-use.html; Alcohol and COVID-19, WORLD HEALTH ORGANIZATION, https://www.euro.who.int/__data/assets/pdf_file/0010/437608/Alcohol-and-COVID-19-what-you-need-to-know.pdf; Smoking and COVID-19, WORLD HEALTH ORGANIZATION, https://www.who.int/news-room/commentaries/detail/smoking-and-covid-19.  The danger to Mr. Danson is compounded by the substantial number of active COVID-19 cases that have been reported at FMC Lexington.  See Def.'s Reply at 14-15.  According to the defendant, as of May 27, 2020, Mr. Danson is incarcerated at one of the top five Federal Bureau of Prisons

institutions for active cases of COVID-19, with 228 active inmate cases being reported out of a population of 1,196.  Id. at 14.  As of that date, active inmate cases accounted for nineteen percent of FMC Lexington's total inmate population.  See id.  Mr. Danson's undiagnosed health condition, personal history, and individual characteristics, which increase his potential for contracting COVID-19, and the severe outbreak of the virus at FMC Lexington are "extraordinary and compelling" circumstances warranting a sentence reduction.

Reducing Mr. Danson's sentence would also be consistent with today's understanding of the Sentencing Commission's Sentencing Guidelines.  At the time of the plea negotiations, Mr. Danson's applicable sentencing range was calculated with a career offender enhancement because of his two prior convictions for attempt – attempted distribution of cocaine and attempted possession with intent to distribute PCP.  Def.'s Reply at 40 (citing PSR ¶¶ 68, 74-76, 82).  Current interpretation of the Sentencing Guidelines, however, demonstrates that such prior inchoate offenses do not actually qualify Mr. Danson as a career offender.

U.S.S.G. § 4B1.2 defines the prior "controlled substance offenses" that may be counted towards career offender status.  See U.S.S.G. § 4B1.2(b).  The definition itself does not include inchoate controlled substance offenses such as attempt, aiding and abetting, and conspiracy.  See id.  But the commentary to Section 4B1.2 names these as offenses that qualify as predicate offenses for career offender status.  Id. at Application Note 1.  Almost seven years after Mr. Danson was sentenced as a career offender, however, the D.C. Circuit in United States v. Winstead concluded that the commentary to U.S.S.G. § 4B1.2 is inconsistent with the Guideline itself and held that inchoate controlled substance offenses cannot count towards a career offender calculation under the Sentencing Guidelines.  United States v. Winstead, 890

7

F.3d 1082, 1090-92 (D.C. Cir. 2018).  Thus, under current law, Mr. Danson's two prior attempt convictions would not qualify him as a career offender.  See id.

Under Winstead, Mr. Danson would not be considered a career offender under the Sentencing Guidelines if he were sentenced today.  His total offense level would be thirty-one (accounting for a three-level decrease for his acceptance of responsibility), his Criminal History Category would be IV, and his Sentencing Guidelines range would therefore be 151 to 188 months.  Def.'s Reply at 40-41; see PSR ¶¶ 17, 67, 69-70, 81-82.  In addition, if Mr. Danson were sentenced today, as a non-career offender, he would now be eligible for a sentence reduction under the retroactive amendments to the drug Sentencing Guidelines, like some of Mr. Danson's co-defendants.  Def.'s Reply at 41 (citing Wade Mot.; Smith Order); see also United States v. Smith, Criminal No. 10-51-09, 2019 U.S. Dist. LEXIS 64052 (D.D.C. Apr. 15, 2019).  Were Mr. Danson to be sentenced today, taking account of the amendments to the drug Sentencing Guidelines, his total offense level would be twenty-nine (accounting for acceptance of responsibility) and his Criminal History IV.  His Sentencing Guidelines range therefore would only be 121 to 151 months.  Def.'s Reply at 41-42 (citing U.S.S.G., Supp. to Appx. C, Amend. 782 (Nov. 1, 2014); U.S.S.G. § 2D1.1(c)(4) (base offense level thirty-two for at least three but less than ten kilograms of PCP)); see PSR ¶¶ 69-70.

Mr. Danson has been incarcerated since March 12, 2010.  Def.'s Reply at 42.  Accounting for good time credit, he has served the equivalent of 148 months – more than seventy-five percent of his original sentence – and only three months shy of the high end of the Sentencing Guidelines range that would apply if he is no longer classified as a career offender and the retroactive amendments to the drug Guidelines were applied.  See id.  Further

incarceration will neither provide additional deterrence to criminal conduct nor provide just punishment for Mr. Danson's offense.

The government argues that Mr. Danson "still poses a danger to the community and [] has not sufficiently shown himself to be rehabilitated." Gov't Opp. at 6. As evidence, the government points to his membership in a conspiracy whose members "committed numerous acts of violence" and Mr. Danson's three disciplinary violations while incarcerated. Id. While the other members of the conspiracy did commit serious acts of violence, Mr. Danson's individual crimes committed while a member of the conspiracy were not crimes of violence, and his prior record contains "no violent history." Transcript of Sentencing Hearing at 5, 7. Furthermore, Judge Collyer previously recognized that Mr. Danson's "proactive use of his period of incarceration is commendable" and that he "has clearly undertaken to use his time in prison to prepare for his eventual reintegration into the community." Early Release Order at 2-3. Mr. Danson earned his GED in 2014, has actively engaged in prison rehabilitation programs, and has shown insight into his damaging substance abuse while interacting with others in pro-social and meaningful ways. Gov't Opp. at 6; see Def.'s Reply at 43-44; Def.'s Sealed Ex. H. Although rehabilitation, by itself, is not grounds for a sentence reduction, U.S.S.G. § 1B1.13 appl. n. 3 (citing 28 U.S.C. § 994(t)), the Court recognizes the progress Mr. Danson has made in preparing for his successful reintegration into society.

The detailed release plan Mr. Danson has outlined provides further support for Mr. Danson's reintegration preparations. He will reside with his fiancé, who is employed as a dental assistant, and three other family members. He will also have the emotional support of his mother, father, and sister. Def.'s Reply at 45. In addition, Mr. Danson has job prospects through his cousins that likely will result in immediate employment after his release. Id. Family support

and gainful employment thus have the potential to provide Mr. Danson with a powerful support system, which one hopes will aid him in readjusting to life outside of prison and help prevent recidivism.

Mr. Danson's undiagnosed health condition, personal history, and individual characteristics, along with the severe outbreak at FMC Lexington together constitute extraordinary and compelling circumstances warranting a sentence reduction.  In addition, considering the change in the law following Winstead, the substantial time Mr. Danson already has served, the fact that the crimes he personally committed while a member of the conspiracy were not "crimes of violence," and the steps he has taken towards rehabilitation and reintegration into society while incarcerated, the Court finds that a reduction in Mr. Danson's sentence is consistent with the factors set out in Section 3553(a).  The Court will grant Mr. Danson's motion for compassionate release.  For the foregoing reasons, it is hereby

ORDERED that pursuant to the authority vested in this Court to reduce a previously imposed term of imprisonment under 18 U.S.C § 3582(c)(1)(A), defendant's Pro Se Motion for Compassionate Release [Dkt. No. 656] is GRANTED; it is

FURTHER ORDERED that the term of 192 months of imprisonment on Count Two as set forth in the original Judgment dated January 8, 2012, is hereby reduced to a sentence of TIME SERVED; it is

FURTHER ORDERED that the defendant be released as soon as is practicable; it is

FURTHER ORDERED that the defendant shall abide by all of the conditions of supervised release set forth in the original Judgment; and it is

FURTHER ORDERED that defendant's Pro Se Motion to Reduce Sentence Pursuant to the First Step Act of 2018 [Dkt. No. 626] is DENIED AS MOOT.

An Amended Judgment will be issued forthwith.

SO ORDERED.

DATE: June 25, 2020

PAUL L. FRIEDMAN
United States District Judge